***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument of the parties. The appealing parties have not shown good ground to receive further evidence or rehear the parties or their representatives. Following its review, the Full Commission affirms the Opinion and Award of the Deputy Commissioner, with certain modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. All parties are properly brought before the Industrial Commission, are subject to, and bound by, the provisions of the North Carolina Workers' Compensation Act, and the Industrial Commission has jurisdiction over the parties and of the subject matter.
5. On August 4, 2005, an employee-employer relationship existed between the named Plaintiff and the named defendant-employer.
6. All parties have been correctly designated, and there are no questions as to misjoinder or nonjoinder of the parties.
7. All carriers have been correctly designated, and there are no questions as to insurance coverage of the parties.
8. Plaintiff sustained a compensable injury to his left leg on August 4, 2005, when his left thigh was struck by an industrial cord. Defendants accepted Plaintiff's claim by filing a Form 60 on August 18, 2005. Defendants have provided Plaintiff with disability and medical compensation since that time.
9. Plaintiff had an average weekly wage of $772.24 which would result in a compensation rate of $514.83.
10. Stipulated exhibit 1, Plaintiff's exhibits 1-3, and Defendants' exhibits 1-6 were admitted into the record.
 ***********
Based upon the competent evidence of the record, the Full Commission makes the following:
 FINDINGS OF FACT *Page 3 
1. Plaintiff is 53 years old. He graduated from high school and worked as a farmer for some time before going into the power line business. Plaintiff worked for over 20 years performing power line installation.
2. Plaintiff resides in Cerro Gordo, North Carolina. Defendant-Employer's home office is in Wilmington, North Carolina, which is 60.3 miles from Cerro Gordo.
3. Defendant-Employer builds transmission power lines in North and South Carolina. The company began in 2002, employs 110 field employees, and has a fleet of well over 400 vehicles.
4. Plaintiff was employed with Defendant-Employer as an "Operator," operating various types of heavy machinery at Defendant-Employer's job sites. Plaintiff maintained his CDL throughout the duration of his employment, and renewed his license in November of 2006. Plaintiff was provided with a company truck when it was required for completion of the job he was assigned to work.
5. Plaintiff often had to drive further than the distance between his residence and Wilmington to get from his residence to a job site. When asked how often his work was located closer than the distance between Chadbourn, the closest city to Cerro Gordo, and Wilmington, Plaintiff responded, "Not often." In addition to driving to his assigned job site, Plaintiff would drive from his residence to Defendant-Employer's office in Wilmington approximately once per week to do paperwork on Friday mornings.
6. Plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with Defendant-Employer to his left leg on August 4, 2005. Defendants admitted the compensability of this accident and Plaintiff's left leg injury through the filing of an Industrial Commission Form 60. *Page 4 
7. Plaintiff was admitted to Palmetto Richland Memorial Hospital, in Columbia, South Carolina, on August 4, 2005. Dr. Frank K. Noojin, III, surgically stabilized a fracture to Plaintiff's leg. Plaintiff was discharged from the hospital on August 11, 2005.
8. Plaintiff continued to follow up with Dr. Noojin postoperatively and underwent three additional surgeries before his femur fracture fully consolidated. On January 21, 2008, Dr. Noojin opined that Plaintiff had reached maximum medical improvement, and he recommended vocational rehabilitation and an FCE.
9. Plaintiff's February 13, 2008 FCE demonstrated that he is capable of work at a medium physical demand level.
10. On February 20, 2008, Dr. Noojin affirmed his assessment that Plaintiff had reached maximum medical improvement, discharged Plaintiff from his care with medium-duty restrictions per the FCE, and advised that Plaintiff should follow up with Dr. Eskander, his primary care physician, for any further prescription needs.
11. On March 6, 2008, Dr. Noojin assigned Plaintiff a 20% permanent partial impairment rating to the left leg. On March 19, 2008, Dr. Noojin revised his rating, assigning a 22% rating to the leg and an additional 4% rating to the spine. Thereafter, Dr. Noojin confirmed that the permanent impairment to Plaintiff's left knee and spine resulted from his compensable injury.
12. Defendant-Employer identified two positions, Radio Operator and Fleet Manager's Assistant, as likely within Plaintiff's work restrictions. The Fleet Manager's Assistant position is an office staff position. *Page 5 
13 Regina Sander, Plaintiff's vocational rehabilitation specialist, performed a job analysis of both positions offered by Defendant-Employer. Both positions are to a large extent sedentary.
14. On April 30, 2008, Ms. Sander discussed both jobs with Dr. Noojin. Dr. Noojin was aware that the commute between Plaintiff's residence and Defendant-Employer's office is approximately 60 miles. Dr. Noojin approved both positions; however, he commented that he felt the Fleet Manager's Assistant position was a better choice for Plaintiff. Plaintiff was restricted to light duty.
15. In the past, the Fleet Manager's Assistant position has only intermittently been filled. Employees placed into the Fleet Manager's Assistant position have thereafter been promoted into the Fleet Manager's position. Previous Fleet Manager's Assistants have earned between $18.50 and $27.00.
16. Due to the growth of Defendant-Employer's business, at least one additional person is required to carry out the management of the fleet. Defendant-Employer's fleet of over 400 vehicles includes tractors that haul heavy equipment, track machines, specialized machinery, pickup trucks, tool trailers, and line trucks. Plaintiff is familiar with each of these types of equipment.
17. On May 9, 2008, an MRI revealed a medial meniscus tear in Plaintiff's left knee. Dr. Noojin related the tear to Plaintiff's August 4, 2005 compensable injury. He performed a left knee arthroscopy with partial medial meniscectomy on July 1, 2008. Plaintiff was released to light-duty, sedentary work on July 7, 2008. *Page 6 
18. On or about July 30, 2008, Plaintiff was advised that the Fleet Manager's Assistant position, a sedentary office position, remained available to Plaintiff at a rate of $19.50 per hour.
19. Plaintiff's counsel responded that because Plaintiff had not reached maximum medical improvement, he would be glad to try the Fleet Manager's Assistant position. However, he required that Defendant-Employer furnish a company truck upon his arrival for mandatory drug screening.
20. Defendant-Employer denied Plaintiff's demand for a company truck. Plaintiff's counsel was advised that Defendant-Employer had previously furnished Plaintiff a truck as a necessary part of his job; however, company trucks are not provided for office staff positions.
21. On July 31, 2008, Plaintiff's counsel requested Dr. Noojin's opinion as to whether the 60-mile drive from Plaintiff's residence to Defendant-Employer's office would be appropriate. Dr. Noojin answered in the negative.
22. Plaintiff's counsel reiterated the request for a company truck on September 5, 2008.
23. On or about December 23, 2008, Dr. Noojin released Plaintiff at maximum medical improvement with medium-duty work restrictions consistent with the February 25, 2008 FCE.
24. Dr. Noojin testified that Plaintiff's sustained physical capabilities are more consistent with a light-duty job than a medium-duty job. Dr. Noojin testified that he had no concerns regarding Plaintiff's ability to perform the Fleet Manager's Assistant position. He also opined that Plaintiff is physically capable of performing the drive between his residence and Defendant-Employer's office in Wilmington to perform the Fleet Manager's Assistant position. *Page 7 
25. Dr. Noojin testified that a person taking narcotic medication during the day should not drive. Dr. Noojin testified that Plaintiff should not drive at all while taking Lorcet, a narcotic pain medication, or SOMA, a muscle relaxer.
26. Dr. Noojin began prescribing Plaintiff Lorcet prior to September 21, 2005. Dr. Noojin first prescribed Plaintiff SOMA as early as October 20, 2005. He continued to regularly provide Plaintiff with prescriptions of both medications through October 24, 2007.
27. Dr. Noojin testified that, to his knowledge, Plaintiff was not taking Lorcet or SOMA during the day at the time of his release.
28. On October 2, 2008, Dr. Noojin provided Plaintiff with a permanent automobile handicapped placard.
29. Plaintiff testified that he takes Lorcet three times per day and SOMA two times per day. Dr. Noojin is not the prescribing physician.
30. At hearing, Plaintiff was specifically questioned regarding the side effects of both Lorcet and SOMA. In response, he testified that SOMA will make him a bit sleepy sometimes; however, he is not affected by Lorcet. Plaintiff has never asserted that he cannot drive due to the side effects of Lorcet or SOMA. To the contrary, at hearing, Plaintiff acknowledged that he does drive.
31. Plaintiff has made no effort to seek alternative medications to Lorcet and SOMA.
32. Plaintiff testified that he is physically capable of performing the Fleet Manager's Assistant job.
33. Plaintiff testified that he does not claim he is totally disabled.
34. The competent credible evidence establishes that plaintiff is physically capable of performing the Fleet Manager's Assistant position. The position is a legitimate position with *Page 8 
Defendant-Employer, which even though it has been intermittently filled in the past, has become necessary on a regular basis due to the growth of Defendant-Employer's business. Dr. Noojin's opinions were equivocal at best regarding whether Plaintiff could drive to Wilmington each day to perform the job. Plaintiff himself did not testify that he could not make the drive and the evidence indicates that Plaintiff was more concerned about whether he would be provided with a company truck to make the drive. For these reasons, the Full Commission finds that the Fleet Manager's Assistant position constitutes suitable employment for Plaintiff, which Plaintiff unjustifiably refused.
35. Furthermore, aside from Defendant-Employer's job offer, Plaintiff has made no effort to seek employment since his injury on August 4, 2005.
36. Plaintiff presented the expert testimony of Stephanie Yost. She offered no opinion on Plaintiff's earning capacity. Ms. Yost performed 2 labor market surveys and concluded that Plaintiff was not employable in the common labor market. Ms. Yost found that there were no jobs similar to a fleet manager assistant in the common labor market, but based her search primarily on the title of the position rather than a description of the duties. Limited weight is given to the testimony of Ms. Yost.
37. Plaintiff has failed to establish that he is unable to earn his pre-injury average weekly wage in any employment as a result of his compensable injury.
38. At the hearing, Plaintiff testified that he found vocational counselor Regina Sander to be pushy and manipulative. Based on this testimony, the Full Commission finds that continuing the relationship between Plaintiff and Ms. Sander would not be productive.
 *********** *Page 9 
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable injury by accident that arose out of and in the course of his employment with Defendant-Employer on August 4, 2005. N.C. Gen. Stat. § 97-2(6).
2. As a direct result and proximate result of the August 4, 2005 injury by accident, Plaintiff was totally disabled from August 4, 2005 up to and through December 23, 2008, the date on which he reached maximum medical improvement. N.C. Gen. Stat. § 97-29.
3. "Disability," as defined in the Worker's Compensation Act, is "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9). Plaintiff bears the burden of establishing that he is unable to earn the same wages that he had earned before the injury, either in the same employment or in other employment, and that the diminished earning capacity is a result of the compensable injury. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). The employee may meet his burden of proving disability using any one of the four prongs enumerated in Russell v. Lowes Product Distribution,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). In the present case, Plaintiff has failed to prove disability under any one of the four prongs of Russell.
4. Plaintiff is entitled to temporary total disability benefits at a rate of $514.83 from August 4, 2005 through December 23, 2008, and no further, subject to a credit for any disability benefits already paid by Defendants beyond December 23, 2008. N.C. Gen. Stat. §§ 97-29, 97-42. *Page 10 
5. Plaintiff is entitled to payment of his permanent partial disability ratings pursuant to N.C. Gen. Stat. § 97-31, subject to a credit for any disability benefits already paid by Defendants beyond December 23, 2008.
6. Plaintiff has shown good cause for removing Ms. Sander as the vocational rehabilitation professional in this case. N.C. Gen. Stat. § 97-25.
 *********** *
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff is entitled to temporary total disability compensation at a rate of $514.83 from August 4, 2005, through December 23, 2008, and no further, subject to a credit for any disability benefits already paid by Defendants beyond December 23, 2008.
2. Plaintiff is entitled to payment of permanent partial disability compensation of $514.38 for 56 weeks, subject to a credit for any disability benefits already paid by Defendants beyond December 23, 2008.
3. Plaintiff's October 22, 2008 Motion to Remove Rehabilitation Professional is GRANTED.
4. Defendants shall pay the costs.
This the ___ day of December 2009.
 S/___________________ PAMELA T. YOUNG CHAIR *Page 11 
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER